1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

**LARRY BANKS,**

Case No. 1:11-cv-02067 LJO MJS (HC)

11

**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner,

12

13

v.

14
15

**CONNIE GIPSON, Warden,**

16

Respondent.

17

18      Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Justian P. Riley of

20   the office of the California Attorney General. Respondent declined magistrate judge

21   jurisdiction on January 25, 2013. (ECF No. 8.)

22   **I.      PROCEDURAL BACKGROUND**

23      Petitioner is currently in the custody of the California Department of Corrections

24   pursuant to a judgment of the Superior Court of California, County of Fresno, following

25   his conviction by jury trial on September 23, 2009, for first degree murder and use of a

26   knife during commission of the murder. (Clerk's Tr. at 402-03.) On October 22, 2009,

27   Petitioner was sentenced to an indeterminate term of life in prison. (Id.)

28      Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

1

District, on July 22, 2010. (Lodged Doc. 2.) On March 17, 2011, the appellate court affirmed the conviction. (Lodged Doc. 1.) Petitioner's petition for review was summarily denied by the California Supreme Court on June 8, 2011. (Lodged Docs. 5-6.)

Petitioner filed his federal habeas petition on December 15, 2011. (Pet., ECF No. 1.) The petition raised three grounds for relief: 1) the trial court violated ex post facto principles in allowing propensity evidence of uncharged sexual offenses; 2) the trial court violated Petitioner's due process rights in allowing the presentation of propensity evidence of uncharged sexual offenses; and 3) the jury instruction allowing the presentation of propensity evidence of uncharged sexual offenses violated Petitioner's due process rights.

Respondent filed an answer to the petition on April 5, 2012. (Answer, ECF No. 14.) Petitioner filed a traverse on April 27, 2012. (Traverse, ECF No. 16.)

## II.   **STATEMENT OF THE FACTS**[1]

In 1977 Susan Vallin lived with her sister Barbara.**[FN1]** Susan was dating Larry Ballesteros and Barbara was dating David Castillo. On the evening of May 10, 1977, Susan and Ballesteros got in an argument. Susan, Barbara, and Castillo, dropped Ballesteros off at a bar at 9:00 p.m. or 10:00 p.m. and then returned back to Susan's apartment. Susan left and went for a walk.

**FN1**. Because several members of the Vallin family testified at trial we shall refer to them by their first names.

Catherine Meyers and Kim Foster were preparing to watch a television program when they heard an odd scream, described by Meyers as a "gurgling scream." Foster grabbed a gun, told Meyers to call the police, and went outside. Meyers looked out a window. Meyers saw someone jogging by. The jogger was wearing a hooded sweatshirt and was carrying a knife. She described the individual as African-American, five feet eight or five feet nine inches tall, weighing 150 to 170 pounds. Meyers also said the jogger was agile and appeared to be under 30 years old. Foster saw someone jog by. The person was medium height and fairly slim, wearing a hooded sweatshirt. Foster thought the person was black.

The police department received a call at 10:43 p.m. that reported a woman screaming. Police officers responded to the area and found Susan's body near a carport. She was unclothed except for her pants,

---

[1] The Fifth District Court of Appeal's summary of the facts in its March 17, 2011 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

which were around her left leg. She had shoes on and was wearing jewelry. She did not have any money on her person or in her clothing. There was dirt on her buttocks and back side. A blood trail led across the alley to a secluded area.

Homicide investigators determined that it was likely that Susan was initially attacked in a concealed area between a fence and a shed. In that area, the dirt was disturbed and there was a pool of blood, blood splatters, her blouse and a cigarette.

It was approximately a 13-minute walk between Susan's residence and where her body was found. Police went to the home of Susan's relatives to notify them of her death. Ballesteros was there and the family was arguing with him.

Ballesteros went to the police station and gave a statement. He told police that he and Susan argued after which he went to a bar and stayed until closing. He said the owner of the bar and the waitress could confirm that he was at the bar during the time he claimed to be there. He said he returned to Susan's by taxi. When he returned he was confronted by members of Susan's family.

At trial Ballesteros recalled the evening a little differently. He said he was drinking at the bar. He left with three women and they dropped him off at about 11:30 p.m.

Susan sustained three stab wounds to the right side of her neck. One of the wounds was lethal. The cut was from a knife with a two-edged blade. She suffered many abrasions, bruises and some lacerations. She had a deep bruise to the right side of her forehead that occurred before she was stabbed and she had a bruised lip. The abrasions on her face were from a blunt blow. The abrasions on her back could have been because she was on her back on gravel when she was attacked. She had abrasions above and below her knees and abrasions on her arms. Because of the way blood was dripping, Susan may have been on her knees when she was stabbed. The location of the stab wounds were consistent with the attacker holding the knife in his left hand. The injuries did not compare to a normal kitchen knife. There were no abrasions or evidence of forced sexual penetration.

Due to advancements in DNA testing, investigators decided, in 1999, to test Susan's clothing. There were visible stains on the blouse and on the pocket and crotch area of the jeans. Because DNA had not been collected from Susan at the time of her murder, reference samples of DNA were obtained from her parents.

A criminalist retrieved DNA from a sperm stain on the blouse. She put the DNA profile in the system and it came back with a "hit" for defendant. Officers obtained a DNA sample from defendant, who was in prison.

One of the samples on the blouse contained a combination of DNA from defendant and a child of John and Grace Vallin (Susan's parents). There was a mixed profile obtained from the jeans sample. The major portion of the profile was consistent with defendant. The minor portion was from a child of John and Grace Vallin. The criminalist was able to make a

3

statistical statement from a sperm stain on the blouse that was not a mixture. This stain matched defendant's profile. The DNA profile is expected to occur in a randomly selected individual in approximately 1 in 12 trillion African-Americans; approximately 1 in 150 trillion Caucasians; and approximately 1 in 900 trillion Hispanics. None of the DNA extracted from Susan's clothing matched Larry Ballesteros; there was a sample from the jeans indicating a possible third contributor.

Defendant was released on parole on March 17, 1977. Following his release he lived with his mother for two or three months. She testified that he was left-handed and of average, thin build.

Defendant is five feet seven inches tall. The distance between his mother's house and where Susan lived was approximately one-tenth of a mile. The distance between where Susan's body was found and defendant's mother's house was eight-tenths of a mile.

The court allowed the people to present evidence of a former sexual assault by defendant. L.P., formerly L.M., testified that in 1971 she and her husband owned a fruit stand. She was in the back room with her husband when two young "kids" entered their business. One of the individuals had a rifle. Defendant was one of the individuals. L.P.'s husband was told to get on the floor. Defendant told L.P. to get on her knees. He hit L.P. with a rifle, unzipped his pants and pulled L.P's pants down. He used her pants, which were hanging on one leg, to trip her. Defendant then sat on her chest trying to force her to open her mouth. He choked her and hit her in the head with the butt of the rifle. Defendant and the other assailant heard sirens and then ran out of the business. L.P identified defendant from a photographic lineup and again at the preliminary hearing.

It was stipulated at trial that defendant was the person who attacked L.P. in 1971, that he pled guilty to first degree robbery, and that one count of robbery and one count of assault to commit rape were dismissed.

**DEFENSE**

Susan's sister Mary was 17 years old, her sister Rose Marie was 11 years old, and her sister Jennie was 13 years old at the time Susan was murdered.

Mary testified that when Larry Ballesteros arrived in a taxi cab after Susan had been murdered he looked up and grinned like he knew something "was up." Someone said that Ballesteros had some bloody clothes that he hid. She, her father, and sister found some clothes and took them to the police. The police told her father to leave Fresno and not come back.

Rose Marie testified that on the day of Susan's murder she was at Susan's apartment. She saw Ballesteros putting a kitchen knife in his sock. She did not tell anyone about the knife until years later.

Jennie testified that she was at Susan's apartment when Ballesteros came over at 4:00 p.m. or 5:00 p.m. He tried to get Jennie to go in the other room with him. She did not go into the other room because

4

1
2

she did not trust him. She also saw Ballesteros walking from where Susan was killed. He was wearing different clothes than what he had worn earlier in the day and was not carrying his knife, which he usually carried with him.

3
4

R.M. testified that Ballesteros raped her in 1983. He told her that if she did not do what he asked, he would kill her like he had killed his girlfriend.

5
6

People v. Larry Banks, 2011 Cal. App. Unpub. LEXIS 1969, 1-8 (Cal. App. 5th Dist. Mar. 17, 2011).

7

**II.    DISCUSSION**

8

**A.    Jurisdiction**

9
10
11
12
13
14
15
16

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

17

**B.    Legal Standard of Review**

18
19
20
21
22

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

23
24
25
26
27

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

28

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1.   Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

1   Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

2   Federal law for a state court to decline to apply a specific legal rule that has not been

3   squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

4   (2009), quoted by Richter, 131 S. Ct. at 786.

5                    2.    Review of State Decisions

6        "Where there has been one reasoned state judgment rejecting a federal claim,

7   later unexplained orders upholding that judgment or rejecting the claim rest on the same

8   grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

9   "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

10  (9th Cir. 2006). Determining whether a state court's decision resulted from an

11  unreasonable legal or factual conclusion, "does not require that there be an opinion from

12  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

13  "Where a state court's decision is unaccompanied by an explanation, the habeas

14  petitioner's burden still must be met by showing there was no reasonable basis for the

15  state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

16  not require a state court to give reasons before its decision can be deemed to have been

17  'adjudicated on the merits.'").

18       Richter instructs that whether the state court decision is reasoned and explained,

19  or merely a summary denial, the approach to evaluating unreasonableness under §

20  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

21  or theories supported or, as here, could have supported, the state court's decision; then

22  it must ask whether it is possible fairminded jurists could disagree that those arguments

23  or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

24  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

25  was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves

26  authority to issue the writ in cases where there is no possibility fairminded jurists could

27  disagree that the state court's decision conflicts with this Court's precedents." Id. To put

28  it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings."  Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3.   Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin v. Lamarque, 555 F.3d at 834.

### III.   REVIEW OF PETITION

#### A.   Claim One: Ex Post Facto Claim

Petitioner claims that the trial court erred in allowing the prosecution to present evidence that Petitioner had previously committed a sexual assault on a separate female victim. This propensity evidence was admitted pursuant to California Evidence Code section 1108. Section 1108 was enacted in 1995, and Petitioner committed his crime in

8

1977. Accordingly, Petitioner argues that the admission of the propensity evidence pursuant to section 1108 violated ex post facto principles because it permitted his conviction on less or different testimony than previously allowed. (Pet., ECF No. 1 at 9-19.)

### 1.   State Court Decision

Petitioner presented this claim by way of direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the appellate court and summarily denied in a subsequent petition for review by the California Supreme Court. (See Lodged Docs. 1, 6.) Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the California Court of Appeal explained:

**THE EVIDENCE CODE SECTION 1108 EVIDENCE**

> Prior to trial defendant made a motion to exclude evidence of uncharged sexual offenses. He argued the evidence was inadmissible under Evidence Code sections 1101, 1108 and 352. The People disagreed.

> The People sought to admit two prior assaults by defendant, one when he was a juvenile and the other, the attack on L.P. The prosecutor argued the attack on L.P. and the attack on Susan were very similar, both were struck in the face with an object, both had their pants pulled down and left hanging on one leg, and the dirt marks on Susan's backside suggested defendant sat on her chest in a manner similar to his attack on L.P.

> Defendant argued the L.P. assault should be excluded under Evidence Code section 352 because it created a substantial danger of

undue prejudice. Defendant claimed that the sexual assault could not be disentangled from the robbery and presenting the robbery evidence to the jury would be outside of Evidence Code section 1108 and would be prejudicial. The main thrust of his argument was that the L.P. incident was a brutal and violent attack brought in to bootstrap a circumstantial-evidence-murder case.

The court excluded the evidence of defendant's sexual assault committed when he was a minor. As to the assault on L.P., the court acknowledged that defendant's position was that he was not currently charged with a sexual offense, the prior act was remote, and its admission would be unduly prejudicial. The court found, however, that the relevancy and probative value far outweighed any prejudicial effect, noting in particular the striking similarities between the two assaults. The court said it was not admitting the evidence on the question of motive to the extent that the People would argue that Susan was killed in order to prevent her testimony against defendant if he were apprehended or became a suspect in the sexual assault.

Prior to hearing the testimony of L.P., the court gave a limiting instruction to the jury. L.P. then testified as previously set forth.

During closing arguments to the jury, the district attorney pointed out the similarities between the crime against L.P. and the murder of Susan Vallin. He characterized the evidence as propensity evidence and told the jury that if they found that defendant did it before, they may find that he had the propensity to commit sexual assaults against women. The district attorney made these statements with the caveat that the jury could not base their decision of guilt solely on the fact that such an act had been done before.

Defense counsel argued that the sexual assault charges involving L.P. were dismissed and defendant was convicted of robbery. He said defendant is a robber.

The district attorney countered this argument by stating the L.P. evidence is highly relevant and shows propensity. He said that defendant is a violent rapist, and he did the same thing before.

During the instructions to the jury the court again instructed them on the limitations that apply to the use of prior sexual-assault evidence.

## I. Ex Post Facto

"Evidence of prior criminal acts is ordinarily inadmissible to show a defendant's disposition to commit such acts. [Citation.] However, the Legislature has created exceptions to this rule in cases involving sexual offenses [citation] and domestic violence [citation]." (People v. Reyes (2008) 160 Cal.App.4th 246, 251.) Evidence Code section 1108 was added in 1995 and provides in part that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [s]ection 1101, if the evidence is not inadmissible pursuant to [s]ection 352."

Defendant contends Evidence Code section 1108 alters the legal

rules of evidence permitting convictions based on less or different testimony than previously allowed. Because it was enacted after the offense occurred, he claims that admission of evidence under section 1108 violates ex post facto principles.

"The proscription against the ex post facto application of laws has several components, each of which is designed to prevent a criminal defendant from being unfairly disadvantaged by a change in the law occurring between the time of the crime and the time of trial." (<u>People v. Flores</u> (2009) 176 Cal.App.4th 1171, 1176 (<u>Flores</u>).) In <u>Calder v. Bull</u> (1798) 3 U.S. 386, four categories of ex post facto laws were set forth. "'"1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender."'" (<u>Flores</u>, supra, 176 Cal.App.4th at pp. 1176-1177.)

Defendant claims the addition of Evidence Code section 1108 after his crime was committed falls into the fourth <u>Calder</u> category. Defendant relies primarily on the case of <u>Carmell v. Texas</u> (2000) 529 U.S. 513 (<u>Carmell</u>), a fourth <u>Calder</u> category case. In <u>Carmell</u>, "the defendant was charged in a Texas criminal court with sexually molesting his stepdaughter while she was between 14 and 16 years old. When the crimes occurred, state law provided that '"[a] conviction [for sexual assault] ... is supportable"' either if it was corroborated by evidence independent of the victim's testimony, or if the victim informed a third person of the offense within six months of its commission. [Citation.] The same statute recognized an exception to the corroboration and 'outcry' requirements for victims under the age of 14, such that their testimony could sustain a conviction even in the absence of any corroboration or outcry evidence. If the statutory requirements were not met, either because corroboration or outcry was lacking, or because the victim was not under the age of 14 when the crime occurred, then the defendant could not be convicted and the trial court would be compelled to enter an acquittal. However, compliance with the statute allowed the jury to decide the case and enter a guilty verdict. [Citation.]

"After the defendant committed the charged crimes, an amendment to the relevant statute expanded the child-victim exception, and allowed sexual assault convictions to rest solely on the testimony of victims under the age of 18. The amendment, which was applied in the defendant's trial, relieved the prosecution of its duty under prior law either to corroborate the stepdaughter's account or to establish that she disclosed the crime within six months. The trier of fact convicted the defendant based solely on the stepdaughter's testimony. [Citation.] The judgment was affirmed on appeal in state court. To reach this result, the appellate court used a principle approved in <u>Collins</u>, supra, 497 U.S. 37 [<u>Collins v. Youngblood</u> (1990) 497 U.S. 37, 43], that exempted ordinary 'evidentiary rules' from the ex post facto ban. [Citations.]

"In a five-to-four decision, the United States Supreme Court rejected the intermediate court's approach in <u>Carmell</u>. The majority first

examined the 300-year-old Fenwick's case. There, Parliament retroactively reduced the number of witnesses needed to sustain a treason conviction in order to successfully prosecute certain political enemies of the Crown. [Citation.] The majority observed that Justice Chase, who studied both Fenwick's case and common law treatises on the subject, framed the fourth ex post facto category in <u>Calder</u>, supra, 3 U.S. (3 Dall.) 386, 390, to prevent such a scenario. [Citation.] The majority explained that just as the law in Fenwick's case originally required more than one witness's testimony to sustain a treason conviction, Texas law at the time of the defendant's crimes required more than the stepdaughter's testimony to support a sex crime conviction. Postcrime changes requiring only one witness in Fenwick's case, and eliminating the corroboration and outcry requirements in the defendant's case, suffered from the same flaw in the majority's view—reducing 'the quantum of evidence necessary to sustain a conviction.' [Citation.]

"The <u>Carmell</u> majority explained that this view of the fourth <u>Calder</u> category serves interests similar to other ex post facto proscriptions against laws altering the definition of crimes or the quantum of punishment. 'In each of these instances, the government subverts the presumption of innocence by reducing the number of elements it must prove to overcome that presumption; by threatening such severe punishment so as to induce a plea to a lesser offense or a lower sentence; or by making it easier to meet the threshold for overcoming the presumption. Reducing the quantum of evidence necessary to meet the burden of proof is simply another way of achieving the same end.... [T]he government refuses, after the fact, to play by its own rules, altering them in a way that is advantageous only to the State, to facilitate an easier conviction.'" (<u>John L. v. Superior Court</u> (2004) 33 Cal.4th 158, 177-178.)

Defendant contends that the inference created by Evidence Code section 1108 is a sufficiency of the evidence rule as that term was used in <u>Carmell</u>. He admits that section 1108 does not directly reduce the prosecutor's burden of proof, but argues it nevertheless makes it easier for the prosecution to establish guilt.

Defendant's argument was rejected in <u>Flores</u>, supra, 176 Cal.App.4th 1171; a case involving the admission of prior acts of domestic violence pursuant to Evidence Code section 1109.**[FN2]**

> **FN2**. "Sections 1108 and 1109 are 'complementary portions of the same statutory scheme.' [Citation.] Section 1108, which allows admission of evidence of uncharged sexual offenses, and section 1109, allowing admission of evidence of uncharged domestic violence, are 'virtually identical,' and cases which have interpreted section 1108 have been relied upon to resolve similar issues involving section 1109." (<u>People v. James</u> 191 Cal.App.4th 478, 482, fn. 2.)

Defendant contends <u>Flores</u> is wrongly decided because it fails to recognize that Evidence Code section 1109 is a sufficiency of the evidence rule, as that term is used in <u>Carmell</u>. The <u>Flores</u> court analyzed <u>Carmell</u> and other cases and concluded that appellant's argument, which is the same argument made here, "ignores that the fourth category bars the government from changing rules involving the legal sufficiency of the evidence, not the admissibility of a particular piece of evidence bearing

12

upon a particular fact to be proved." (<u>Flores</u>, supra, 176 Cal.App.4th at p. 1177.)

The <u>Flores</u> court read the <u>Carmell</u> court's decision regarding the <u>Calder</u> fourth category of ex post facto principles as limiting that category "to those changes in the rules of evidence that have the practical effect of lowering the '"quantity or the degree of proof"' required to convict [citations]—in other words, evidentiary changes that reduce the legal sufficiency of the evidence necessary for a finding of guilt." (<u>Flores</u>, supra, 176 Cal.App.4th at p. 1178.)

"'The issue of the admissibility of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant. Evidence admissibility rules do not go to the general issue of guilt, nor to whether a conviction, as a matter of law, may be sustained.'" (<u>Flores</u>, supra, 176 Cal.App.4th at p. 1178.) The admission of the evidence did not change the elements of the crime or lower the prosecution's burden of proof. (<u>Id.</u> at p. 1180.)

Defendant contends that Evidence Code section 1108 does more than merely make evidence that was previously inadmissible, admissible, it also allows the jury to use the evidence in a manner previously forbidden—as propensity evidence. It is alleged by defendant that such a utilization amounts to a "sea change in the law" that makes it substantially easier for a prosecutor to obtain a conviction.

Quoting from <u>Carmell</u>, the <u>Flores</u> court rejected a similar argument. "'[Evidentiary] rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption. Therefore, to the extent one may consider changes to such laws as "unfair" or "unjust," they do not implicate the same kind of unfairness implicated by changes in rules setting forth a sufficiency of the evidence standard. Moreover, while the principle of unfairness helps explain and shape the Clause's scope, it is not a doctrine unto itself, invalidating laws under the Ex Post Facto Clause by its own force.' (<u>Carmell</u>, supra, 529 U.S. at p. 533, fn. 23;...)" (<u>Flores</u>, supra, 176 Cal.App.4th at p. 1180.)

We agree with the <u>Flores</u> decision and find the utilization of Evidence Code section 1108 to admit evidence, inadmissible at the time the crime was committed, is not a violation of the ex post facto clause. The admission of this evidence is not the functional equivalent of the statute found unconstitutional in <u>Carmell</u>, it does not lower the prosecution's burden of proof and it does not change the elements of the crime of murder.

<u>People v. Larry Banks</u>, 2011 Cal. App. Unpub. LEXIS 1969 at 9-19.

2.    <u>Analysis</u>

The U.S. Constitution provides that "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts. . . ." U.S. Const., Art. I, § 10. In <u>Calder v. Bull</u>, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 3 Dall. 386 (1798), Justice

Chase gave the classic description of ex post facto laws:

> I will state what laws I consider ex post facto laws, within the words and intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d Every law that changes the punishment, and inflects a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

3 U.S. at 390; see Carmell v. Texas, 529 U.S. 513, 537-39 (2000) (fourth Calder category remains valid).

The fourth Calder category prohibits both laws that lower the burden of proof and laws that reduce the quantum of evidence necessary to meet that burden. Cf. Carmell, 529 U.S. at 541. However, it does not mean that a state may not make any change to evidence laws. For example, a change in a witness competency rule did not violate the Ex Post Facto Clause; the changed rule did not always run in favor of the state and did not necessarily affect, let alone subvert, the presumption of innocence. See Carmell, 529 U.S. at 533 n.23, 546. "The issue of the admissibility of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant. Evidence admissibility rules do not go to the general issue of guilt, nor to whether a conviction, as a matter of law, may be sustained." Id. at 546; see also Hopt v. Territory of Utah, 110 U.S. 574, 589-90 (1883) ("Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage, for they do not . . . alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed.").

In analyzing Petitioner's claim, the California Court of Appeal set forth the appropriate federal standard and applied the leading Supreme Court case of Carmell to Petitioner's case. The state court determined that § 1108, while adding to the pool of evidence which the jury could consider, did not lessen the prosecution's burden to prove

14

1   Petitioner's guilt beyond a reasonable doubt. The state appellate court's application of

2   <u>Carmell</u> was reasonable. The defendant in <u>Carmell</u> had been accused of molestation,

3   and asserted that a recently amended law violated the ex post facto prohibition. <u>Carmell</u>,

4   529 U.S. at 516. Texas had amended the disputed law, which had previously prohibited

5   sexual assault convictions upon the victim's uncorroborated testimony, unless the victim

6   had informed someone of the assault within six months, to authorize conviction on the

7   victim's testimony alone. <u>Id.</u> at 516-517. By decreasing "the minimum quantum of

8   evidence required to obtain a conviction," the law violated the ex post facto prohibition.

9   <u>Id.</u> at 534. <u>Carmell</u> noted that ordinary rules of evidence, unlike the Texas law at issue,

10  do not violate the Ex Post Facto Clause, because the question of evidence admissibility

11  differs entirely from whether admitted evidence suffices to permit a conviction. <u>Carmell</u>,

12  529 U.S. at 546-547. The California Court of Appeal construed § 1108 as an evidence

13  admissibility rule as opposed to a rule that determined whether admitted evidence

14  suffices to permit a conviction.

15      Section 1108 was enacted after the crime in question occurred, but it did not

16  lower the burden of proof for the prosecution or change the quantum of evidence

17  necessary to convict. The statute permitted the jury to consider additional relevant

18  evidence that was not excluded under § 352 in determining whether the prosecution had

19  met its burden of proof. Petitioner has not shown that § 1108, on its face or as applied in

20  his case, altered the burden of proof of the amount of evidence necessary to convict.

21  Section 1108 changed evidence admissibility rules, but that was permissible under

22  <u>Carmell</u> and did not run afoul of the Ex Post Facto Clause. Further, even though it is true

23  that § 1108 may allow conviction on different testimony than that allowed before the

24  adoption of the rule, such evidence is permissible based on the "extended discussion of

25  the difference between sufficiency rules on one hand, and admissibility and competency

26  rules on the other" in <u>Carmell</u>. <u>See</u> <u>Schroeder v. Tilton</u>, 493 F. 3d 1083, 1088 (9th Cir.

27  2007) (rejecting ex post facto challenge to § 1108); <u>Doe v. Busby</u>, 661 F.3d 1001, 1023

28  (9th Cir. 2011) (rejecting similar ex post facto challenge to § 1109).

1    The California Court of Appeal's rejection of the Ex Post Facto Clause claim was

2    not contrary to nor an unreasonable application of" federal law. 28 U.S.C. § 2254(d)(1). It

3    is recommended that Petitioner's first claim for relief be denied.

4    **B.    Claims Two and Three: Introduction of Prejudicial Evidence**

5    Petitioner next two claims contend the trial court violated his due process rights by

6    admitting irrelevant and unduly prejudicial evidence. During trial the prosecutor moved to

7    introduce evidence relating to a prior robbery committed by Petitioner. Petitioner pled

8    guilty to one count of robbery, however, he was originally charged with two counts of

9    robbery and one count of assault with intent to commit rape. The prosecutor presented

10   the preliminary hearing transcript from the offense in which evidence was presented that

11   during the robbery Petitioner attempted, through the use of force, to sexually assault the

12   female store clerk during the commission of the robbery. Over objection of defense

13   counsel, the court allowed the evidence to be presented. Petitioner contends that the

14   presentation of the evidence violated his due process rights because the evidence was

15   more prejudicial than probative, and that the law prohibits the admission of propensity

16   evidence in general.

17   2.    State Court Decision

18   In the last reasoned decision denying Petitioner's claim, the appellate court

19   explained:

20   **II. Weighing Prejudice vs. Probative Value**

21   Defendant contends the trial court failed to properly evaluate
22   factors concerning prejudice and probative value when it conducted the
     Evidence Code section 352 analysis as required by Evidence Code
23   section 1108, subdivision (a).

24   Before getting to the merits of the argument, defendant claims the
     Evidence Code section 352 analysis engrafted into Evidence Code section
25   1108 performs an essential constitutional function. He argues that the
     legal issue here is his federal due process right to be free from undue
26   prejudice caused by admission of evidence of uncharged offenses, thus
     the application of Evidence Code section 352 to this constitutional
27   question creates a mixed question of fact and law requiring de novo
     review by this court.

28   The question is not a mixed question of law and fact subject to de

novo review. The California Supreme Court in <u>People v. Falsetta</u> (1999) 21 Cal.4th 903, found that Evidence Code section 1108 does not violate due process. It held that the prospect of a fundamentally unfair trial is saved by the language in Evidence Code section 1108 requiring the court to review the evidence pursuant to Evidence Code section 352 before admitting it. (<u>Falsetta</u>, supra, 21 Cal.4th at pp. 916-917.)

Next, defendant argues the trial court erred in admitting the evidence because it was unduly prejudicial. In particular, defendant claims the sexual assault aspects of the L.P. incident were inextricably bound up with the robbery and the jury would thus be aware that defendant was convicted of robbery. It is argued that a prior robbery conviction is not admissible under Evidence Code section 1108. In addition, it is argued that the L.P. incident was particularly violent because it involved the use of a firearm, a type of weapon not used in the charged murder. Defendant asserts that the jury might have misused the evidence from the L.P. incident to infer that he was predisposed to violence, an inference also not permitted by Evidence Code section 1108. Defendant made these same arguments in the trial court and the trial court considered and rejected them.

"On appeal, we review the admission of other acts or crimes evidence under Evidence Code section 1108 for an abuse of the trial court's discretion. [Citation.] The determination as to whether the probative value of such evidence is substantially outweighed by the possibility of undue consumption of time, unfair prejudice or misleading the jury is 'entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence.'" (<u>People v. Miramontes</u> (2010) 189 Cal.App.4th 1085, 1097.)

In admitting prior sexual offenses "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (<u>People v. Falsetta</u>, supra, 21 Cal.4th 903, 917.)

The trial court reviewed the legal issues of relevancy and undue prejudice. It stated that the evidence offered on the prior assault on L.P. established defendant's responsibility for it and noted that there were striking similarities between that assault and the assault on Susan. Although the jurors learned of the robbery during L.P.'s testimony, the robbery aspect of the assault was mild when compared to the sexual assault of L.P. Also, the use of the gun during the assault of L.P. was highly relevant because it showed that a hard object was used to hit L.P. in the face, a type of beating similar to the one Susan received during the sexual assault. It was not the nature of the weapon that was relevant and highly probative; it was the use of a hard object to beat the victim. The fact that defendant had a gun was not unduly prejudicial, particularly since the evidence showed he did not use the gun except to beat his victim while sexually assaulting her. Although Evidence Code section 1108 allows evidence of prior sexual assaults to prove propensity, there is nothing in

1
2
the section that precludes the admission of evidence of a prior sexual assault when it was violent. Defendant's violent nature was demonstrated in the sexual assault, not the robbery. The trial court precluded the admission of another sexual assault by defendant.

3
4
The trial court did not abuse its discretion when it admitted evidence of the sexual assault against L.P. pursuant to Evidence Code section 1108.

5
**III. Due Process**

6
7
8
9
10
Disagreeing with People v. Falsetta, supra, 21 Cal.4th 903, defendant contends that the admission of prior criminal acts to prove propensity to commit the charged offense always violates fundamental due process principles. Defendant acknowledges that pursuant to Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450 this court is bound to follow the decision of the California Supreme Court. He raises the issue because he believes the issue is ripe for review before the United States Supreme Court.

11
We are bound by the decision in Falsetta. The admission of prior sexual assaults to prove propensity does not violate due process.

12
People v. Larry Banks, 2011 Cal. App. Unpub. LEXIS 1969 at 19-23.

13
3.    Analysis

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
As Respondent correctly argues, the United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process. See Estelle v. McGuire, 502 U.S. at 75, n.5; Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001). In Estelle, the Supreme Court expressly refused to determine whether the introduction of prior crimes evidence to show propensity to commit a crime would violate the Due Process Clause. Id. ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); see also Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006) ("Estelle expressly left this issue an 'open question'"). Because the Supreme Court has specifically declined to address whether the introduction of propensity evidence violates due process, Petitioner lacks the clearly established federal law necessary to support his claims. Id.; see also Mejia v. Garcia, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (relying on Estelle and Alberni and concluding that the introduction of propensity evidence under California Evidence Code § 1108 does not provide a basis for federal habeas relief, even

18

1   where the propensity evidence relates to an uncharged crime); Holley v. Yarborough,

2   568 F.3d 1091, 1101 (9th Cir. 2009) (The Supreme Court "has not yet made a clear

3   ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

4   process violation sufficient to warrant issuance of the writ.").

5          Accordingly, the state courts' rejection of Petitioner's claims could not have been

6   "contrary to, or an unreasonable application of, clearly established" United States

7   Supreme Court authority, since no such "clearly established" Supreme Court authority

8   exists. 28 U.S.C. § 2254(d)(1).

9          Nevertheless, there can be habeas relief for the admission of prejudicial evidence

10  if the admission was fundamentally unfair and resulted in a denial of due process.

11  Estelle, 502 U.S. at 72; Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v.

12  Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993); Gordon v. Duran, 895 F.2d 610, 613 (9th

13  Cir.1990). Constitutional due process is violated if there are no permissible inferences

14  that may be drawn from the challenged evidence. Jammal v. Van de Kamp, 926 F.2d

15  918, 919-20 (9th Cir. 1991). "Evidence introduced by the prosecution will often raise

16  more than one inference, some permissible, some not." Id. at 920. "A habeas petitioner

17  bears a heavy burden in showing a due process violation based on an evidentiary

18  decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

19         Here, the California Court of Appeal appropriately found that the evidence was

20  properly admitted to show Petitioner's propensity towards violent sexual assault based

21  on the prior offense. Both the Ninth Circuit and the California Supreme Court have found

22  that California Evidence Rule 1108 ("Rule 1108") survives due process challenges

23  because of California Evidence Rule 352 ("Rule 352"), which the Court of Appeal

24  appropriately applied in this case. See People v. Falsetta, 21 Cal. 4th 903, 917, 89 Cal.

25  Rptr. 2d 847, 986 P.2d 182 (Cal. 1999) ("[T]he trial court's discretion to exclude

26  propensity evidence under section 352 saves section 1108 from defendant's due

27  process challenge.").

28         The Court of Appeal sufficiently protected Petitioner's due process rights by

1  finding that the Superior Court had not abused its discretion in applying Rule 352 to

2  admit the propensity evidence under Rule 1108. The Court of Appeal found the evidence

3  to have a high probative value, which outweighed the danger of prejudice. People v.

4  Larry Banks, 2011 Cal. App. Unpub. LEXIS 1969 at 19-23 (applying Cal. Evid. Code §

5  352). The Court of Appeal found the prior offense probative because "there were striking

6  similarities between that assault and the assault on Susan" and "the use of the gun

7  during the assault of L.P. was highly relevant because it showed that a hard object was

8  used to hit L.P. in the face, a type of beating similar to the one Susan received during

9  the sexual assault." Id. Further, the Court did not find the evidence overly prejudicial

10  because "the robbery aspect of the assault was mild when compared to the sexual

11  assault of L.P." Id.

12      This Court must defer to the Court of Appeal's conclusions with regard to

13  California Law, Bains v. Cambra, 204 F.3d 964, 972 (9th Cir. 2000) (citing Wainwright v.

14  Goode, 464 U.S. 78, 84 (1983)). The Court finds that this analysis adequately addressed

15  the permissible inferences created by the evidence and the fundamental fairness of its

16  introduction. The California Court of Appeal decision denying this claim was not contrary

17  to clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to

18  habeas relief.

19      **C.**    **Claim Four: Instructional Error: Failure to Provide Jury Instruction**

20      Petitioner claims that the trial court erred in instructing the jury on the evaluation

21  and use of the propensity evidence. (Pet. at 28-31.) Specifically, Petitioner contends that

22  the jury instruction allowed the jury to use the uncharged offense for propensity to

23  commit murder, not just sexual assault. (Id.)

24          1.    State Decision

25      In the last reasoned decision denying Petitioner's claim, the appellate court

26  explained:

27      **IV. Limiting Instruction**

28          Pursuant to CALCRIM No. 1191 the court instructed the jury on

how to utilize the prior sexual assault evidence: "The People presented evidence that the Defendant, Larry Banks, committed the crime of assault with intent to commit rape, Penal Code section 220, but is not charged in this case. This crime is defined for you in the following instruction: [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant ... in fact committed the uncharged offense. [¶] ... [¶] Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. [¶] A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offense, you may, but are not required to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses. <u>And based on that decision also conclude that the defendant was likely to commit a sexual assault resulting in the murder of Susan Vallin as charged here.</u> [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. [¶] A prior sexual assault is not sufficient by itself to prove that the defendant is guilty of the rape or attempted rape resulting in the murder of Susan Vallin. The People must still prove the charge and allegation beyond a reasonable doubt." (Boldface and underlining added.)

Defendant states that he would not be challenging the instruction were it not for the underlined language in the passage quoted above. He contends that the emphasized language was erroneous because it permitted the jury to use the evidence of the uncharged act not only to show that he committed a sexual offense, but also that he committed murder. He claims that, by permitting the jury to use evidence of violence in the uncharged act to infer that he had a propensity to commit the violent act of murder, the trial court violated not only the permissible scope of Evidence Code section 1108, but also federal due process principles.

The courts have approved the general language of CALCRIM No. 1191. (<u>People v. Reliford</u> (2003) 29 Cal.4th 1007, 1012-1013 (<u>Reliford</u>); <u>People v. Cromp</u> (2007) 153 Cal.App.4th 476, 480.)

"A jury may use 'the evidence of prior sex crimes to find that defendant had a propensity to commit such crimes, which in turn may show that he committed the charged offenses.' [Citations.]" (<u>Reliford</u>, supra, 29 Cal.4th at p. 1013.) CALCRIM No. 1191 instructs the trial court to insert the charged sex offense after "was likely to commit." The charged offense for which the evidence is received is not, however, always a "sex offense."

In <u>People v. Story</u> (2009) 45 Cal.4th 1282, the defendant was tried for first degree felony murder. (<u>Id.</u> at pp. 1290-1291.) At trial, the prosecutor sought the conviction on a felony murder theory with rape and burglary being the underlying felonies. (<u>Id.</u> at p. 1291.) The court found that the evidence of other sexual offenses committed by Story were properly received under Evidence Code section 1108. "[W]e conclude that a defendant accused of such a murder is accused of a sexual offense within the meaning of section 1108." (<u>Story</u>, supra, 45 Cal.4th 1282 at p. 1285.)

The defendant here was not charged with a sex offense (possibly

1
2
3
4

due to the statute of limitations). He was charged with first degree murder and was prosecuted on two theories, one of which was felony murder with the underlying felony being a sex offense. The jury was instructed that to prove defendant committed first degree felony murder, the People must prove that he committed or attempted to commit rape, that he intended to do so, and that "while committing or attempting to commit rape, the defendant did an act that caused the death of another person."

5
6
7
8
9
10
11
12
13
14
15

The court chose to fill in the blank in CALCRIM No. 1191 with "a sexual assault resulting in the murder of Susan Vallin." Clearly, the sexual assault itself did not "result" in the murder of Susan Vallin. She did not die from the sexual assault. But, we do not believe that the phrasing used by the court carries the consequences alleged by defendant. The jury was told that if it found defendant committed the uncharged offense it had the option of choosing to conclude that he was disposed or inclined to commit sexual offenses. That portion of the instruction clearly limited the consideration of the uncharged offense to the question of disposition or inclination to commit sexual offenses. Based on that decision the jury could also conclude that defendant committed the sexual assault that ended with the murder of Susan Vallin. Any confusion was resolved by the felony-murder instructions which set forth that defendant must have committed or attempted to commit the sexual assault, must have intended to do so, and while doing so committed a further act that caused Susan's death. The wording of the CALCRIM No. 1191 instruction merely directed the jury that their decision regarding the sexual assault propensity evidence was relevant to the charged crime of felony murder but limited to defendant's disposition or inclination to commit sexual offenses. The instruction did not tell the jury that they could use evidence of violence in the uncharged act to infer that defendant had a propensity to commit the violent act of murder.

16

The instruction was not erroneous.

17

People v. Banks, 2011 Cal. App. Unpub. LEXIS 1969 at 20-28.

18

2.      General Principles Regarding Trial Error In Instructing Jurors

19
20
21
22
23
24

This Court's review of Petitioner's claim of state instructional error is "limited to deciding whether [his] conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2241. In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must first conclude that the alleged error was of constitutional magnitude. See California v. Roy, 519 U.S. 2 (1996).

25
26
27
28

In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must conclude that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." Roy, 519 U.S. at 5; Brecht, 507 U.S. at 637. Federal habeas relief is warranted only if the Court, after reviewing the record, has

1    "grave doubt" as to the error's effect. Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir.

2    1998). "The burden of demonstrating that an erroneous instruction was so prejudicial

3    that it will support a collateral attack on the constitutional validity of a state court's

4    judgment is even greater than the showing required to establish plain error on direct

5    appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). The trial court's error in omitting

6    a jury instruction is less likely to be prejudicial than the trial court's misstatement of the

7    law. Henderson, 431 U.S. at 155; see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th

8    Cir. 1997) (habeas petitioner whose claim involves a failure to give a particular

9    instruction bears an especially heavy burden).

10        To evaluate the effect of jury instructions, the Court must look at the context of the

11   entire trial and overall charge to the jury. Estelle, 502 U.S. at 72; Prantil v. California, 843

12   F.2d 314, 317 (9th Cir. 1988). They may not be judged in artificial isolation. Estelle, 502

13   U.S. at 72. In addition, a reviewing court's principal constitutional inquiry is whether there

14   is a reasonable likelihood that the jury applied the challenged instructions in a way that

15   violates the Constitution. See id.

16        While a state is generally free to define the elements of an offense, once the state

17   has defined the elements, due process requires that the jury be instructed on each

18   element and instructed that they must find each element beyond a reasonable doubt.

19   Francis v. Franklin, 471 U.S. 307, 313 (1985); In re Winship, 397 U.S. 358, 364 (1970);

20   United States v. Perez, 116 F.3d 840, 847 (9th Cir. 1997); Stanton, 146 F.3d at 728. Due

21   process requires that the jury be instructed on each element of the offense. Keating v.

22   Hood, 191 F.3d 1053, 1061 (9th Cir. 1991); Stanton, 146 F.3d at 728 (9th Cir. 1998).

23        It necessarily follows, therefore, that constitutional trial error occurs when a jury

24   makes a guilty determination on a charged offense without a finding as to each element

25   of the offense. According to the Supreme Court, a jury instruction that omits an element

26   of the offense constitutes such an error. Neder v. United States, 527 U.S. 1, 8 (1999).

27   However, such an error "does not necessarily render a criminal trial fundamentally unfair

28   or an unreliable vehicle for determining guilt or innocence." Id. at 9. Provided that such

an error occurred, Petitioner's conviction can only be set aside if the error was not harmless under <u>Chapman v. California</u>, 386 U.S. 18 (1967); <u>Neder</u>, 527 U.S. at 15. Under the <u>Chapman</u> harmless error test, it must be determined "beyond a reasonable doubt" whether "the error complained of did not contribute to the verdict obtained." <u>Chapman</u>, 386 U.S. at 24.

### 3.   Analysis

Here, Petitioner contends the trial court erred in instructing the jury on the evaluation and use of the uncharged conduct. Specifically, Petitioner contends that the Court erred in providing the jury with the instruction contained in CALCRIM No. 1191. CALCRIM No. 1191 instructs the jury that it may only consider uncharged crimes if the prosecution proves by a preponderance of the evidence that the uncharged crimes were committed. If the jury decides that the uncharged crimes were committed, CALCRIM No. 1191 provides the following limiting instruction:

> If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit [the charged crimes], as charged here. If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of [the charged crimes]. The People must still prove each element of the charge beyond a reasonable doubt. [Do not consider this evidence for any other purpose [except for the limited purpose of _, ?].]"

CALCRIM No. 1191. Petitioner contends that the additional language added to the instruction, stating "that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit a sexual assault resulting in the murder of Susan Vallin, as charged here" prejudiced Petitioner.   (<u>See</u> Clerk's Tr. at 347.) While California Evidence Code § 1108 permits a jury to use evidence of an uncharged sexual offense to show that a defendant had the propensity to commit sexual offenses, Petitioner contends the jury instruction here improperly allowed the jury to use the prior sexual offense to infer that Petitioner was predisposed to commit murder. (Pet. at 28-29.)

1       Looking at the context of the trial as a whole, including the other instructions given

2   to the jury, it cannot be said that the state court's determination that the modified

3   instruction did not render Petitioner's trial fundamentally unfair or violate his due process

4   rights was an unreasonable determination of Supreme Court law. See 28 U.S.C. §

5   2254(d); Estelle, 502 U.S. at 71-72.

6       The jury was given instructions regarding the appropriate standards of reasonable

7   doubt and the presumption of innocence. (See Clerk's Tr. at 281, 293-94); CALCRIM

8   Nos. 103, 220. Further, the trial court provided instructions that set forth the required

9   elements of the crimes for which Petitioner was charged. (See Clerk's Tr. at 324-340);

10  CALCRIM Nos. 500, 520-21, 540A, 549. The trial court instructed the jury with CALCRIM

11  No. 1191. That instruction stated that the uncharged crime of assault with the intent to

12  commit rape could only be considered if there was a preponderance of the evidence that

13  the crime was committed. (Id.) The instruction also confirmed that the criminal acts for

14  which Petitioner was charged had to be proven beyond a reasonable doubt. (Id.)

15      Here, one of the theories of murder presented to the jury was felony-murder

16  based on the murder occurring during the commission of a rape. Accordingly, the

17  instruction was properly given to allow the jury to use the uncharged sexual assault to

18  determine if Petitioner was disposed or inclined to commit the sexual assault that

19  occurred concomitant with the murder. The state court found that the "instruction merely

20  directed the jury that their decision regarding the sexual assault propensity evidence was

21  relevant to the charged crime of felony murder but limited to defendant's disposition or

22  inclination to commit sexual offenses" and that the jury could not "infer that defendant

23  had a propensity to commit the violent act of murder." People v. Banks, 2011 Cal. App.

24  Unpub. LEXIS 1969 at 20-28. As described above, the use of propensity evidence has

25  not been found by the Supreme Court as violative of Petitioner's due process rights.

26  Holley v. Yarborough, 568 F.3d at 1101. Furthermore, the court properly instructed the

27  jury regarding the elements of the offense, and the appropriate burdens of proof.

28  Petitioner has not shown that the jury instructions as a whole were improperly given or

had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)

Consequently, the Court finds that the jury instruction at issue did not render Petitioner's trial fundamentally unfair or violate his due process rights. Accordingly, the Court cannot find the Court of Appeal's rejection of Petitioner's claim to be unreasonable. See 28 U.S.C. § 2254(d). Petitioner is thus not entitled to federal habeas relief on his instructional error claim.

## IV.    **RECOMMENDATION**

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    October 9, 2013            /s/ Michael J. Seng
                                              UNITED STATES MAGISTRATE JUDGE